## James A. Kirk et al. v. Dennis Scally.

1. MASTER AND SERVANT—*Master Must Inform the Servant of Known Danger.*—Where a master orders a servant to perform a duty in a dangerous place without informing him of the danger, he will be liable for injuries sustained by the servant by reason of such failure to inform him of such danger.

2. EVIDENCE—*Customs of Employers.*—The fact that it was the custom of an employer in his business to care for persons injured while in his service without regard to the question of fault in causing the injury and that he continued salaries of all injured employes, has no bearing, upon the issues involved in a suit for personal injuries, and is inadmissible.

3. DAMAGES—*When Not Excessive.*—Where an employe engaged in oiling machinery at a soap manufactory fell through an opening in the floor left by workmen and broke his collar and hip bones, and received other injuries, some of which are permanent, and by reason of which he was confined to his house for a few weeks, and at the time of the injury he was earning $1.50 per day, *it was held* that a verdict for $1,000 was not excessive.

**Trespass on the Case,** for personal injuries. Trial in the Circuit Court of Cook County; the Hon. GEORGE W. BROWN, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the March term, 1898. Affirmed. Opinion filed November 16, 1898.

Appellee brought this action against appellants, his employers, to recover for personal injuries sustained, as it was alleged, through the negligence of appellants. The gist of the negligence complained of, was the permitting of an unguarded opening or hole in the sixth floor of appellants' building, and the act of the former in sending the appellee, without proper warning, to work upon that floor at 5:30 in the afternoon of the 7th day of February, A. D. 1896. While engaged in his work there, appellee fell through this opening and through a large conduit pipe below the opening, down to the second floor of the building. The duty of appellee in his employment was the oiling of machinery. It appears from his testimony, which is uncontradicted in this regard, that he had never before been upon this sixth floor. The factory had been burned and rebuilt, and upon

the date of the injury the sixth floor was substantially completed, except that several large copper tubes, three feet in diameter, were being built from the second floor through the several floors to the top of the building. The opening in the sixth floor, through which appellee fell, was one of the openings left for one of these tubes, and the tube was already built from its lower end in the soap vats on the second floor up to and through the fifth floor, but was not completed to the opening into the sixth floor. There was shafting upon the sixth floor which it was proposed to begin using on the next day, and at 5:30 in the afternoon, after appellee had changed his clothing preparatory to going home, the foreman ordered him to go to the sixth floor and oil this shafting. Appellee testified that the foreman gave him no instruction or warning as to the peril resulting from the uncovered opening in the floor. The foreman, Kelo, testified that he knew of the open hole and that he told appellee to take a lantern because it was dangerous. Appellee denied that anything was said except that he was ordered to do the work. One of appellants testified that appellee told him, after the injury, that he had become dizzy while upon the ladder and fallen. Appellee denied this conversation, and testified that he was upon the floor, moving the ladder, when he fell into the hole. After appellee was discovered in the soap vat on the second floor, appellants' master mechanic went to the sixth floor and found the ladder "laying kind of sideways against the east wall, right beside the hole," and the lighted lantern standing near by.

It is undisputed that appellee sustained fractures of the collar bone and of the crest of the ilium. He claims also to have sustained injury which has brought on incontinence of urine, from which he is still suffering. He remained in the hospital four or five weeks and was confined to his house a few weeks. At the time of the injury he was earning $1.50 per day. Appellants paid him his regular wages for the months of February and March, and half pay for the month of April, and then told him he must go to work,

and that they would give him work which he could do. He refused to go to work, claiming that he was not able. On May 5, 1896, appellee made written application to the City Railway Company for the position of conductor, stating therein that he had no sickness or infirmities. He also made application for admission to an employe's mutual aid association, and was admitted. He stated in that application that he had not been confined to his bed by sickness for more than one week during the five preceding years, and then from a cold. He began work as a conductor the latter part of May, 1896, and has worked in that capacity ever since, but claims he has lost on an average four or five days each month because of sickness. The pay rolls of the City Railroad Company show that he did not lose more than $53.40 during 1896, and that in 1897 he earned $12.91 more than his regular wages. Upon the trial he recovered verdict and judgment thereon in the amount of one thousand dollars.

REMY & MANN, attorneys for appellants.

WILLARD GENTLEMAN, attorney for appellee; WORTH E. CAYLOR, of counsel.

MR. JUSTICE SEARS delivered the opinion of the court.

It is contended by counsel for appellants that the verdict is not supported by the evidence, because, it is argued, it appears that appellee fell and was injured by reason of a sudden attack of dizziness, and through no fault of appellants. It is also argued in this behalf, that there was no negligence of appellants, that the opening was left uncovered by the coppersmiths who did the work upon appellants' building, and that appellants were in no wise answerable for their negligence. It is further contended that appellee was guilty of contributory negligence. It is also complained that there was error in the exclusion of evidence. And finally it is urged that the verdict is excessive.

From the undisputed evidence it is apparent that appellee,

who had gone to the floor in question under order of appellants' foreman, was injured by falling through an unguarded opening in the floors, of which he had no knowledge whatever, and of which condition of the floor the foreman had direct and definite knowledge. As to whether the foreman warned appellee of any danger the evidence is conflicting; but there is no evidence to show that he was warned of the particular peril in question. The jury were warranted in finding that he had no warning. One of the appellants testified that after the injury appellee stated to him that he had fallen from the ladder as the result of a sudden attack of dizziness. In this, however, he was positively contradicted by the appellee, who testified that he had made no such statement, and, in effect that he had not fallen from the ladder, but was upon the floor and engaged in moving the ladder from one point to another in his work when he fell. Evidence was given as to the finding of the ladder and lantern after appellee had fallen. The question thus presented was one of credibility, and peculiarly within the province of the jury, and we are not prepared to say that their finding was against the weight of the evidence.

It can not be maintained that any negligence of the coppersmiths in leaving the opening uncovered and unguarded can operate to relieve appellants from liability. Appellants, not the coppersmiths, were in possession and control of the floor in question. The gist of the negligence of appellants was in sending appellee, who was unfamiliar with the place, to work about this opening, which was left unguarded, of which condition appellants are chargeable with knowledge.

The foreman testified: "At ten o'clock of the day of the accident, and two or three times after, I was on the sixth floor and saw the hole was open. The coppersmiths were then working on the fifth floor."

There is no evidence which, in our opinion, would warrant a jury in finding that appellee was guilty of contributory negligence. In obedience to the order of his foreman he went to a place where he had never before been, and so far as the evidence discloses, he exercised ordinary caution

Kirk v. Scally.

in his work there. If the language used by the foreman in his testimony be interpreted most favorably to appellants, and if his testimony be credited against the testimony of appellee, yet it would not necessarily establish any contributory negligence in the subsequent conduct of appellee.

Appellants offered evidence to show that they had some time before, not on the day of the injury, ordered the coppersmiths to close the holes in the floor. This evidence was properly excluded by the trial court. Its effect, if admitted, could not excuse appellants from the result of their action, through their foreman, when it was known that the coppersmiths had not obeyed this direction.

It is also complained that appellants were not permitted to show that it was a custom in their business to care for persons injured while in their service, without regard to the question of fault in causing the injury.

We think that this evidence was properly excluded. Whether appellants did, or did not, continue salaries of all injured employes, could have no bearing upon the issue here.

The only question remaining is as to the extent of the injuries and the amount of the verdict. It is conceded that there was a fracture of the collar bone and of the bone which protrudes above the hip, called by one of the experts the upper of the bones forming the hip joint. It is claimed by appellee that he also received injuries which have resulted in a disease of the bladder, designated by the medical witnesses as a catarrhal inflammation of the bladder. One of these witnesses testified that this condition would probably be permanent.

But it appears that after the injury appellee, in an effort to obtain employment, made certain statements to the effect that he was physically sound. It became, then, a question for the jury as to how far this contradictory statement should be considered as affecting the credibility of appellee as a witness. The jury apparently gave greater weight to his statement under oath at the trial, and corroborated to some extent by the medical experts, than to a statement not under oath and made in an effort to secure employment.

This was a matter peculiarly within the province of the jury, and we are not disposed to interfere with their finding. If the testimony of appellee and the experts be credited the verdict is not excessive.

No other complaint is made as to the procedure of the trial court. The judgment is affirmed.